IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PETER WIRTH *et al.*,

      Plaintiffs,

vs.                                                                     Civ. No. 20-1340 WJ/KK

PHC LAS CRUCES INC. *et al.*, D/B/A
MEMORIAL MEDICAL CENTER OF
LAS CRUCES, LIFEPOINT HEALTH, INC.,
LIFEPOINT RC, INC., VITTORIO TALEON, MD,
IFEYINWA OBI, CNM,
LA CLINICA DE FAMILIA, INC.,
FIRST STEP CENTER, INC.
LINDA VASQUEZ, R.N.,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT DISCOVERY AND SUBMIT ADDITIONAL BRIEFING
## and
## GRANTING GOVERNMENT'S MOTION FOR SUBSTITUTION OF PARTIES

THIS MATTER comes before the Court upon the following motions:

- Motion for Leave to Conduct Discovery and Submit Additional Briefing Regarding Whether the United States Can Be Substituted for Defendants Taleon, Obi, La Clinica de Familia and LCDF First Step Center, Inc., filed by Plaintiffs on March 15, 2021 **(Doc. 32)**.[1]

- Government's Motion for Substitution of Parties, filed February 1, 2021 **(Doc. 16).**

Having reviewed the parties' briefing and the applicable law, the Court denies Plaintiffs' Motion for Discovery and grants the Government's motion to substitute parties.

---

[1] Defendants claim that Plaintiffs incorrectly identify Defendant First Step, Inc. in their pleadings, and that the entity is correctly identified as LCDF First Step. The Court will adopt Defendants' representation as to the proper name for the entity.

# BACKGROUND

In this wrongful death case, Plaintiffs Sandra Correa and Santiago Ortiz together bring this Complaint following the fatal personal injuries suffered by their infant child Santiago Sebastian Ortiz during birth on August 12, 2017 at PHC-Las Cruces, Inc., d/b/a Memorial Medical Center of Las Cruces ("MMC Hospital") in Las Cruces, New Mexico on August 11, 2017.

## I. Factual Background

According to the complaint, Ms. Correa received regular prenatal care from Defendants Vittorio Taleon, MD and Ifeyinwa Obi, CNM as well as other health care providers, at La Clinica de Familia. Doc. 1-3 at 70. Ms. Correa was identified as a higher risk pregnancy by a doctor at La Clinica de Familia due to her diagnosis of diabetes, for which she received prescribed prenatal care and medication. ¶¶70-72. On August 11, 2017, about a month prior to her due date, she presented at the Memorial Medical Center at PHC-Las Cruces ("MMC") around 5:00 p.m. and informed Obstetrics Triage that her amniotic membranes had ruptured. ¶74. She was admitted to MMC Hospital and Defendant Obi wase assigned to her care. ¶77. Complications developed throughout the evening hours and monitoring showed increasing fetal distress. Various measures were taken to resolve the distress and to deliver the baby vaginally. ¶¶80-113. At 5:20 a.m., Defendant Obi called for Defendant Taleon's assistance at the hospital. ¶¶93, 96. At 6:45 a.m., Ms. Correa was taken to the operating room and the baby was delivered by caesarian section. The baby was pronounced dead at delivery. ¶¶111-112.

## II. Procedural Background

Plaintiffs filed this lawsuit on July 20, 2020 in the First Judicial District Court of Santa Fe, New Mexico, asserting claims of medical negligence, loss of consortium and negligent infliction of emotional distress. The Government removed this action pursuant to 28 U.S.C. §2679(d)(2)

which mandates removal of an action to federal court upon certification by the United States Attorney General that the defendant employee was acting within the scope of his/her federal employment. Doc 1. The Amended Notice of Removal states that this action is covered by the provisions of the Federal Tort claims Act, 28 U.S.C. §§1346(b) and 2671 et seq. Doc. 15 at 2.

On February 1, 2021, the Government filed a Motion for Substitution of Parties (Doc. 16), seeking to substitute the United States of America for certain entities and individuals presently named as Defendants in the above-captioned action ("Defendants"), on the basis that Defendants were acting as either grantees of the Department of Health and Human Services ("HHS") or employees acting within the scope of their employment with HHS. Plaintiffs opposed the substitution of parties and requested additional discovery on the issue, arguing that the Government did not sufficiently establish that Defendants were acting as covered persons within the scope of their grant or employment as deemed employees of the Public Health Service, to warrant substitution under either 42 U.S.C. §233(g) or under 28 U.S.C. §2679.

Defendants consist of five entities and five individuals:

| | |
|---|---|
| **La Clinica de Familia, Inc.** | New Mexico corporation providing medical services in Las Cruces, New Mexico. |
| **LCDF First Step, Inc**. | La Clinica and LCDF First Step are alleged to be alter egos of each other or d/b/a other entity. Doc. 1-3, ¶¶60-61. |
| PHC-Las Cruces | d/b/a Memorial Medical Center in Las Cruces ("MMC"); Alleged to be subsidiary of LifePoint Health, Doc. 1-3, ¶25 |
| LifePoint RC, Inc. ("LifePoint RC") | Alleged to be subsidiary of LifePoint Health. Doc. 1-3, ¶37 |
| LifePoint Health, Inc. ("LifePoint Health") | Alleged as parent corporation of Defendant LifePoint RC and Defendant PHC-Las Cruces, d/b/a MMC. Doc. 1-3, ¶40. Exercises certain controls over operations, staffing, administration, employment, procedures and policies for Defendant PHC-Las Cruces, Inc., d/b/a MMC Hospital. Doc. 1-3, ¶32. |
| **Vittorio Taleon, M.D** | Alleged to be employed by La Clinica, LCDF First Step and PHC-Las Cruces. Doc. 1-3, ¶¶42-46 |
| **Ifeyinwa Obi, C.N.M.** | Alleged to be employed as a certified nurse midwife by La Clinica, LCDF First Step and PHC-Las Cruces. Doc. 1-3, ¶¶53-55 |
| Linda Vasquez, R.N. | Registered nurse employed by PHC-Las Cruces. Doc. 1-3, ¶63. |

The Government seeks substitution for Defendants Vittorio Taleon, M.D., Ifeyinwa Obi, C.N.M., LCDF First Step, and La Clinica de Familia, Inc. (emphasis above in bold), who oppose substitution. The other Defendants (PHC-Las Cruces (MMC), LifePoint RC, LifePoint Health and Linda Vasquez, R.N.) do not oppose substitution. Doc. 16 at 4. The substitution issue concerns only Defendants Taleon, Obi, LCDF First Step and La Clinica de Familia ("La Clinica").

On March 15, 2021, Plaintiffs filed a motion requesting additional discovery and briefing on the issue of substitution of the United States for certain named defendants in this matter. They do not dispute that the United States is the only proper defendant in an FTCA action." *Smith v. U.S.* 561 F.3d 1090, 1099 (10th Cir. 2009). Instead, they claim that the Government has not produced evidentiary support for its certification that Defendants were acting within their scope of employment.

## III. Relevant Law

Congress has provided that, upon certification by the Attorney General or his designee, a civil action which involves defendants acting in the scope of their federal employment at the time of the alleged incident "shall be removed by the Attorney General to the United States District Court in the District where it is pending and the proceeding shall be deemed a tort action brought against the United States under the provisions of Title 28 of the United States Code." 42 U.S.C. § 233(c). The Westfall Act, codified at 28 U.S.C. § 2679(d)(2), also provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, **and the United States shall be substituted as the party defendant**.[2]

---

[2] *See* 28 C.F.R. §15.4 (2019) (delegating authority to make statutory certification to United States Attorney for district where civil action is brought that the federal employee was acting within the scope of his or her office or employment with the Federal government at the time the alleged incident arose).

4

28 U.S.C. §2679(d)(2) (emphasis added); *see also* 28 C.F.R. §15.4 (2019) (delegating authority to make statutory certification to United States Attorney for district where civil action is brought that the federal employee was acting within the scope of his or her office or employment with the Federal government at the time the alleged incident arose); *Garcia v. Reed,* 227 F. Supp 1183, 1187 (D.N.M. 2002) (noting substitution of parties under FTCA upon certification that a defendant employee was acting within the scope of his/her office or employment at the times pertinent to the allegations, and action removed to federal court).

The Government's Westfall Act ("scope-of-employment") certification constitutes *prima facie* evidence that the defendants acted within the scope of their employment for the United States, placing the burden on the plaintiff to prove otherwise. *AAA Pharmacy, Inc. v. Palmetto GBA, L.L.C.*, No. CIV-07-1221-F, 2008 WL 5070958 at *3 (W.D. Okla. Nov. 24, 2008).

Plaintiffs point out that the Attorney General's certification that a federal employee was acting within the scope of his employment "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." *Stout v. Oklahoma ex rel. Oklahoma Highway Patrol*, No. 13-CV-753-WPJ, 2015 WL 127820 at *3 (W.D. Okla. Jan. 6, 2015). Nevertheless, it is Plaintiffs who have the burden of establishing that Government employees' conduct exceeded the scope of their employment. *Roscoe v. United States,* 2004 WL 2377176 *9 (D.N.M. Sept. 9, 2004)(citations omitted); *Richman v. Straley*, 48 F. 3d 1139, 1145 (10th Cir. 1995) (plaintiff bears burden of rebutting scope-of-employment certification by presenting "specific facts"). Upon production of competent evidence by a plaintiff "that would permit a conclusion contrary to that found in the certification," the Government is entitled to an evidentiary hearing at which both sides tender their evidence on all disputes material to the scope of employment issue. *Melo v. Hafer*, 13 F.3d 736, 747 (3d Cir. 1994), *aff'd*, 502 U.S. 21 (1991).

The district court thereafter determines whether the defendant did or did not act within the scope of his or her employment." *Id.*

**DISCUSSION**

In support of its Motion for Substitution of Parties, the United States filed an Amended Certification ("Certification") by Fred J. Federici, Acting U. S. Attorney for the District of New Mexico, stating that Defendants La Clinica, LCDF First Step, Dr. Vittorio Taleon and C.N.M Ifeyinwa Obi, were deemed employees of the Public Health Service, and were acting within the scope of their federal employment at the time of the incident giving rise to this suit[3]:

> La Clinica, LCDF First Step (incorrectly identified by Plaintiffs as "First Step Center, Inc."), Vittorio Taleon, M.D. and Ifeyinwa Obi, C.N.M., have been deemed by the Secretary of the United States Department of Health and Human Services to be Public Health Service employees covered by 42 U.S.C. S 233(a), for acts and omissions that occurred in relation to the allegations of Plaintiffs Complaint.
>
> On the basis of the information now available with respect to the allegations contained in the Complaint, I find that La Clinica de Familia, Inc., LCDF First Step, Vittorio Taleon, M.D. and Ifeyinwa Obi, C.N.M. were acting as covered persons within the scope of their grant and their employment as deemed employees of the Public Health Service during the time alleged in Plaintiffs' Complaint.

*See* Doc. 15-2, ¶¶2, 3.

Plaintiffs challenge the sufficiency of this Certification, claiming there are "significant factual disputes which necessitate further discovery to properly allow [them] to challenge the qualified certification, so that the issue may be decided upon the full evidentiary record." Doc. 32 at 4. The question is whether Plaintiffs should be allowed additional discovery in order to resolve these alleged "factual disputes" and to submit additional briefing. The Government opposes the

---

[3] The Government amended both its Notice of Removal and its Certification in response to the Court's Order requiring the Government to file a motion requesting substitution instead of a "notice." Doc. 13 (Court Order).

request for additional discovery because Plaintiffs did not comply with local rules and because Plaintiffs fail to state valid reasons to conduct discovery or submit additional briefing.

The Court is not denying Plaintiffs' request for additional discovery solely because of their failure to comply with this Court's local rule which requires a good-faith request for concurrence before filing the instant motion. D.N.M.LR-Civ.7.1(a). While the parties did not meet and confer, the Government was keenly aware of the parties' disagreement. In response to the Government's Motion to Substitute, Plaintiffs requested "a reasonable opportunity for discovery, amendment of pleadings and opportunity for fuller briefing" relating to the motion.

The Government's substantive argument—that Plaintiffs fail to state valid reasons to conduct discovery or submit additional briefing—does have merit and it is this argument on which the Court will concentrate for the remainder of the discussion.

**I.       Available Documentation and Plaintiff's Additional Requests**

The Government contends that Plaintiffs cannot meet their burden to successfully challenge the scope-of-employment certification because they have already received evidence in support of it as exhibits to its Motion to Substitute Party (Doc. 22):

- Declaration by Meredith Torres, Senior Attorney in the Office of General Counsel for the U.S. Department of Health and Human Services (Doc. 22-1) confirming the following:
    - that La Clinica receives federal funding pursuant to the Federally Supported Health Centers Assistance Act and is deemed to be an employee of the Public Health Service, making it eligible for FTCA coverage;
    - that LCDF First Step, Dr. Taleon, and C.N.M. Obi are encompassed within the deeming of La Clinica de Familia. *Id.* at ¶¶ 4-7;
    - that (1) Sandra Correa was a patient at La Clinica and received her pre-natal care at one of its approved service delivery sites, namely LCDF First Step; (2) that she later presented at Memorial Medical Center for labor and delivery medical services under the care of Dr. Taleon and C.N.M. Obi.; and that (3) delivery services at MMC are covered in the approved grant application for La Clinica under "Other Activities/Locations." Doc. 22-1, ¶9 (referring to Doc. 22-7 at 14);

7

- "Deeming letter" supporting Ms. Torres' Declaration for calendar year 2017, describing La Clinica as a "Grantee" under Department of Health and Human Services ("DOH") (Doc. 22-2, "Notice of Deeming Action");

- Exhibit supporting scope-of-employment certification that LCDF First Step is encompassed within the deeming of La Clinica. Doc. 22-3 at 2 (describing LCDF First Step as a "La Clinica de Familia service delivery site [where] plaintiff received medical care, treatment, and services . . . .");

- Evidence that both Dr. Taleon and C.N.M. Obi were full-time La Clinica employees in 2017. Doc. 22-4 (federal W-2 wage and tax statements for 2017); Docs. 22-5 & 22-6 (employment contracts for Taleon and Obi showing that both were employed by La Clinica).

In addition to these items, the Government provides other documents in further support of the providers' scope of employment when they treated Ms. Correa—namely, copies of declarations by Dr. Taleon and C.N.M. Obi in which they describe their respective medical specialties; verify their employment and compensation exclusively by La Clinica; and attest to the fact that they did no private billing for the medical services they provided. Doc. 34-1.

In their motion for discovery, Plaintiffs seek to obtain two additional categories of information from the Government. First, they seek information on the relationship between MMC and Defendants Taleon, Obi, La Clinica and LCDF First Step, including contracts; policies and procedures; manuals; medical billing records and business dealings. Doc. 32, ¶11. Second, because the health care providers are employed by La Clinica and LCDF First Step (the federal clinic) but also practice at MMC (a private facility), Plaintiffs seek information regarding the "structure" of both La Clinica as a federal facility and MMC as a private facility. *Id.*, ¶¶6-7.

### III. New Mexico Law Regarding Scope of Employment

Under New Mexico law, an act of an employee is within the scope of employment if: (1) it was something fairly and naturally incidental to the employer's business assigned to the employee; and (2) it was done while the employee was engaged in the employer's business with

the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee. N.M. UJI-Civ. 13-407; *Miera v. George*, 55 N.M. 535, 237 P.2d 102 (1951), cited in *Roscoe v. United States*, No. 03-454 JH/LFG, 2004 WL 2377176 at *9 (D.N.M. Sept. 9, 2004), aff'd, 134 F. App'x 226 (10th Cir. 2005).

New Mexico also recognizes dual employment in which an employer lends his employee to another for a particular employment. *Lavalley v. Univ. of New Mexico Bd. of Regents*, No. CV 15-763 KG/WPL, 2016 WL 9447759 at *3–4 (D.N.M. Mar. 10, 2016) (citing *Weese v. Stoddard*, 1956-NMSC-117, ¶ 7, 63 N.M. 20)). In that situation, the "employer is not liable for injury negligently caused by a servant if the latter is not at the time in the service of the employer, but in the special service of another." *Id.* This concept of dual employment, however, "does not matter for purposes of *respondeat superior*," because the "employer escapes liability by demonstrating the tortfeasor was the special employee of another at the time of the negligent conduct regardless of whether the tortfeasor also remained an employee of the defendant." *Bain v. IMC Glob. Operations, Inc.*, 236 Fed. Appx. 423, 429 (10th Cir. 2007) (discussing *Weese*).

Irrespective of whether the tortfeasor was a borrowed servant, the court must determine whether at the time the tort occurred the servant was acting within the scope of the employer's employment or within the scope of employment of the employer to whom he was lent. *See, e.g., Monett v. Dona Ana Cty. Sheriff's Posse*, 1992-NMCA-096 at ¶ 15, 114 N.M. 452 ("the test for determining whose employee [plaintiff] was turns on the answer to the question of whose work was being done at the time of the accident."); *Weese*, 1956-NMSC-117 at ¶ 7 ("the test is whether in the particular service which he is engaged to perform, the servant continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent . . . .").

## IV. Analysis

Plaintiffs insist that whether Defendants are Public Health Service employees does not end the inquiry for the purposes of substituting the United States as a party. They claim there are "significant factual disputes which necessitate further discovery," based on the fact that the alleged negligence occurred at MMC which is a private hospital. Doc. 32 at 4, ¶11. In their reply, Plaintiffs argue that discovery is necessary in order to determine which entity had the right to control services rendered to Ms. Correa at MMC, and whose instrumentalities were used while providing those services at that facility. Assumedly, Plaintiffs would argue that if Defendants were acting at least partially in the course and scope of their employment with MMC, then they could not be acting solely as federal employees. The problem with this argument is that Plaintiffs do not explain how any of the broad array of materials they seek would assist in resolving their objections to certification, nor do they offer specific facts to support their objections.

The other problem is that the Court cannot see how the requested materials support a need for discovery in light of the undisputed facts and the documentation already received—regardless of which entity had control of providing specific services to Ms. Correa.

### A. Undisputed Facts

"Courts generally disapprove of early discovery on Westfall Act certification where the moving party does not say what facts, if discovered, would lead to a viable theory that [the defendant] was acting outside of the scope of employment." *Stout v. Oklahoma ex rel. Oklahoma Highway Patrol*, No. 13-CV-753-WPJ, 2015 WL 127820 at *6 (W.D. Okla. Jan. 6, 2015) (internal quotations omitted) (citing *Davric Maine Corp. v. U.S. Postal Serv.*, 238 F.3d 58, 68 (1st Cir.2001)).

Plaintiffs allege the following in their complaint:

- Ms. Correa was followed as a patient by both Dr. Taleon and CNM Obi at La Clinica (Doc. 1-3, ¶70);

- Ms. Correa was admitted to MMC for her labor and delivery services (Doc. 1-3, ¶75);

- CNM Obi was assigned to her medical care during her labor and delivery and initially attended to Ms. Correa after her admission to MMC (Doc. 1-3, ¶¶77-95);

- Dr. Taleon arrived later as a consultant when called upon by CNM Obi to due to increasing complications in Ms. Correa's labor. (Doc. 1-3, ¶¶96-116).

In other words, Plaintiffs do not dispute that Ms. Correa was followed as a patient by both Dr. Taleon and CNP Obi at La Clinica; that they provided her health care services at both entities; and that the alleged malpractice occurred as a result of Ms. Correa's care under their care. Further, the Government has already provided documentation that while MMC is not a federal entity itself, La Clinica's deeming letter provided for labor and delivery services at MMC. Thus, the fact that Dr. Taleon and CNM Obi provided care at MMC is not significant because La Clinica patients are as a matter of course sent to MMC for labor and delivery services. Docs. 22-3 at 2; 22-7 at 14 ("LCDF's providers provide OB/Gyn services, including labor and deliveries, to LCDF patients at Memorial Medical Center."); *see Robles v. Beaufort Mem'l Hosp.*, 482 F.Supp.2d 700, 705 (D.S.C. 2007) (noting that 42 U.S.C. § 233(g)(4) specifically contemplates non-profit private entities and that HHS had deemed the hospital eligible for FTCA malpractice coverage which also included its officers and employees, and considered those statements "to constitute the necessary certification.

Given these undisputed facts, the Court cannot see how information on MMC's medical billing and business dealings would lead to a viable theory that Defendants were acting outside the scope of their employment. Plaintiffs have therefore not shown that discovery is warranted—even if Dr. Taleon and CNM Obi were technically being "borrowed" from La Clinica top oversee Ms. Correa's care at MMC. Both Defendants were carrying out the duties assigned to them as La Clinica employees. *See Stout v. Oklahoma ex rel. Oklahoma Highway Patrol*, No. 13-CV-753-

WPJ, 2015 WL 127820 at *6 (W.D. Okla. Jan. 6, 2015) ("It would be inappropriate to [p]ermit additional discovery when the Attorney General's certification is not based on a different understanding of the facts than [that] reflected in [the] complaint.[4]

B. *Lavalley* Case

The Government cites to a District of New Mexico case, *Lavalley v. Univ. of New Mexico Bd. of Regents*, which the Court agrees is both relevant and helpful to the scope of employment issue here. No. CV 15-763 KG/WPL, 2016 WL 9447759 at *3–4 (D.N.M. Mar. 10, 2016). The plaintiff in that case sued Dr. Nicholas Boncher and Dr. Maire Brennan, a resident physician, for medical malpractice under the state Tort Claims Act. She alleged that the malpractice occurred when both doctors, as employees of the University of New Mexico Hospital ("UNMH"), performed surgery on plaintiff at the Veterans Administration Medical Center ("VAMC"). She argued that both doctors were acting, at least partially, in the course and scope of their employment with UNMH, thus negating the Government's contention that they were acting solely as federal employees." 2016 WL 9447759 at *3.

The Government provided documentation indicating that by operation of law the United States was substituted for them as the appropriate defendant. 2016 WL 9447759 at *2. After plaintiff filed a motion challenging the substitution, the court allowed discovery limited to the scope of Drs. Boncher and Brennan's employment with the VAMC. Discovery revealed that the UNM School of Medicine and VAMC operated under an affiliation agreement which provided

---

[4] *See also Schneider v. United States*, No. CIV 06-0964 MCA/WDS, 2007 WL 9734247 at *6 (D.N.M. Apr. 30, 2007) (finding no need for either evidentiary hearing or discovery on scope of employment issue where plaintiff did not identify a disputed issue of material fact warranting such proceedings and where the "the relatively straightforward circumstances" indicated no dispute that defendant was an Air Force officer and the accident occurred while he was driving on the grounds of an Air Force base; *Garcia v. Reed*, 227 F. Supp. 2d 1183 (D.N.M. 2002) (a court need not always grant discovery before making the determination, where the plaintiffs failed to present evidence contradicting the certification or where there is no factual dispute regarding scope of employment based on pleadings, documentary evidence and affidavits). *Id*. at 1188-89.

that the School of Medicine had primary responsibility for the integrated education programs conducted with VAMC, while VAMC retained full responsibility for the care of VA patients and administration of its own operations. Dr. Boncher taught as an assistant professor and worked part-time at the VAMC, performing surgeries and training residents including Dr. Brennan. Part of his salary at UNM was paid in part by the VAMC. Dr. Brennan worked at VAMC as a resident physician. The VAMC indirectly paid her salary through a disbursement agreement with the UNM School of Medicine.[5] Her residency included a six-month rotation at the VAMC and a subsequent six-month rotation at UNMH.

Despite the shared responsibilities between UNMH and the VAMC under the affiliation agreement, the court concluded that Drs. Boncher and Brennan acted within the scope of their employment with the VAMC when they performed surgery on plaintiff because that surgery was "fairly and naturally incidental" to the duties assigned to them by the VAMC, and that Drs. Boncher and Brennan did not perform the surgery out of "some external, independent and personal motive." *Id.* at 9.

The plaintiff in *Lavalley* subsequently requested additional discovery, which the court denied, considering it to be a "fishing expedition." 2016 WL 9447759 at *4 ("considering the undisputed and convincing nature of the evidence already before the Court, Plaintiff's request for further discovery appears to be nothing more than a request to conduct an unwarranted fishing expedition").

    C.    <u>Discovery is Unwarranted</u>

In this case as well, there is sufficient documentation and material provided by the Government showing definitively that the services of both Dr. Taleon and CNM Obi are "fairly

---

[5] The Court omits other details of the affiliation agreement and focuses on the facts in the *Lavalley* case which are critical to the scope of employment question.

and naturally incidental" to their duties related to the delivery of health care to La Clinica patients. Evidence in the form of wage and tax statements, and employment contracts indicate that both doctors were employed and paid only by La Clinica and that no other billing was submitted for the services of either Defendant, either privately or by the entities.

Plaintiffs claim that *Lavalley* is distinguishable from the case at bar because that court *did* allow the parties to conduct limited discovery of the scope of employment issue. This distinction is irrelevant because of the procedural posture of both cases. In *Lavalley,* the Government filed a Notice of Substitution, which plaintiff challenged and which then led to the court's allowance of limited discovery. Here, the Government initially filed a Notice of Substitution, but was ordered by this Court to file a motion to substitute, giving Plaintiff an opportunity to respond. *See* Doc. 13. On filing that motion, the Government submitted substantive documentation supporting the scope of employment certification. In other words, Plaintiffs in this case have already received supporting documentation that was not available to the plaintiff in *Lavalley* prior to the limited discovery allowed by that court. As a result, Plaintiffs' request for discovery here is not on equal footing to the discovery that was allowed in *Lavalley.*

Plaintiffs' request for information on business dealings and billing records regarding the entities involved in this case strikes the Court as the same sort of "fishing expedition" requested in *Lavalley.* Plaintiffs do not dispute that Dr. Taleon and CNM Obi were providing health care services for Ms. Correa—prenatal at La Clinica and labor and delivery MMC—regardless of the alleged outcome of those services. *Cmp. Aldridge v. Hartford Hosp.*, 969 F.Supp. 816, 821 (D. Conn. 1996) (citing *Ward v. Gordon,* 999 F.2d 1399, 1403 (9th Cir. 1993) (affirming district court's finding that a military physician sued for malpractice for acts stemming from his residency training at a private hospital nevertheless was "in furtherance of the government's interests").

14

Plaintiffs have the burden of presenting "specific facts" to rebut the scope-of-employment certification, but they have not done so here. *See Richman v. Straley*, 48 F.3d at 1145. Therefore, the Court comes to three conclusions:

(1) The Court finds and concludes that Plaintiffs have not satisfied their burden of challenging the sufficiency of the certification. They have not offered any facts suggesting that Defendants' conduct might have exceeded the scope of their employment with La Clinica de Familia/LCDF First Step, either in the complaint or in this motion. Nor do they provide any reason to discount the supporting documentation indicating the HHS grantee status of La Clinica de Familia or LCDF First Step. Allowing additional discovery would be unreasonably cumulative or duplicative of what has already been produced. The Court therefore agrees with the Government that Plaintiffs' request for discovery is both overbroad and unsupported and—more to the point— made on a wing and a prayer, in the hope that additional discovery will unearth some factual tidbit which can be used to put off the seemingly inevitable substitution of parties.

(2) The Court also finds and concludes that, given the Court's findings herein, the Government's motion to substitute the United States as a party shall be granted.

(3) Having shown no basis to conduct discovery, Plaintiffs also offer no basis for additional briefing on the matter.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Leave to Conduct Discovery and Submit Additional Briefing Regarding Whether the United States Can Be Substituted for Defendants Taleon, Obi, La Clinica de Familia and LCDF First Step Center, Inc. **(Doc. 32)** is hereby DENIED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that the Government's Motion For Substitution of Parties **(Doc. 16)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE