# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

PETER WIRTH *et al.*,

      Plaintiffs,

vs.                                             Civ. No. 20-1340 WJ/KK

PHC LAS CRUCES INC. *et al.*, D/B/A
MEMORIAL MEDICAL CENTER OF
LAS CRUCES, LIFEPOINT HEALTH, INC.,
LIFEPOINT RC, INC., VITTORIO TALEON, MD,
IFEYINWA OBI, CNM,
LA CLINICA DE FAMILIA, INC.,
FIRST STEP CENTER, INC.
LINDA VASQUEZ, R.N.,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING LIFEPOINT DEFENDANTS' MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

THIS MATTER comes before the Court upon a Motion to Dismiss for Lack of Personal Jurisdiction, filed by Defendants LifePoint Health, Inc. and LifePoint RC, Inc. on April 19, 2021 **(Doc. 35)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is granted.

## BACKGROUND

In this medical malpractice and wrongful death case, Plaintiffs Sandra Correa and Santiago Ortiz together bring this Complaint following the fatal personal injuries suffered by their infant child Santiago Sebastian Ortiz during birth on August 12, 2017 at PHC-Las Cruces, Inc., d/b/a Memorial Medical Center of Las Cruces ("Memorial Medical Center") in Las Cruces, New Mexico on August 11, 2017.

## I.    Factual Background

According to the complaint, Ms. Correa received regular prenatal care from Defendants Vittorio Taleon, MD and Ifeyinwa Obi, CNM as well as other health care providers at La Clinica de Familia.  Doc. 1-3 at 70.  Ms. Correa was identified as a higher risk pregnancy by a doctor at La Clinica de Familia due to her diagnosis of diabetes, for which she received prescribed prenatal care and medication.  ¶¶70-72. On August 11, 2017, about a month prior to her due date, she presented at the Memorial Medical Center around 5:00 p.m. and informed Obstetrics Triage that her amniotic membranes had ruptured. ¶74.  After she was admitted to the hospital, Defendant Obi was assigned to her care.  ¶77. Complications developed throughout the evening hours and monitoring showed increasing fetal distress.  Various measures were taken to resolve the distress and to deliver the baby vaginally.  ¶¶80-113. At 5:20 a.m., Defendant Obi called for Defendant Taleon's assistance at the hospital. ¶¶93, 96. At 6:45 a.m., Ms. Correa was taken to the operating room and the baby was delivered by caesarian section.  The baby was pronounced dead at delivery. ¶¶111-112.

## II.    Procedural Background

Plaintiffs filed this lawsuit on July 20, 2020 in the First Judicial District Court of Santa Fe, New Mexico, asserting claims of medical negligence, loss of consortium and negligent infliction of emotional distress. The Government removed this action pursuant to 28 U.S.C. §2679(d)(2) which mandates removal of an action to federal court upon certification by the United States Attorney General that the defendant employee was acting within the scope of his/her federal employment.  Doc 1.  The Amended Notice of Removal states that this action is covered by the provisions of the Federal Tort Claims Act, 28 U.S.C. §§1346(b) and 2671 et seq.  Doc. 15 at 2.

Defendants consist of five entities and three individuals:

LifePoint Health, Inc. ("LifePoint")
LifePoint RC, Inc. ("LifePoint RC")
PHC-Las Cruces (d/b/a Memorial Medical Center)
La Clinica de Familia, Inc. ("La Clinica")
LCDF First Step, Inc.[1]
Vittorio Taleon, M.D.
Ifeyinwa Obi, Certified Nurse Midwife ("C.N.M.")
Linda Vasquez, R.N.

Defendant PHC-Las Cruces, Inc., d/b/a Memorial Medical Center is a New Mexico corporation, which owns and operates a hospital facility in Las Cruces, New Mexico, doing business as Memorial Medical Center.

On May 11, 2021, the Court granted the Government's motion to substitute the United States for Defendant Taleon, Defendant Obi and Defendants La Clinica de Familia and LCDF First Step Center, Inc. Doc. 42.

In this motion, Defendants LifePoint and LifePoint RC (collectively, "LifePoint Defendants" or "Defendants" for purposes of this motion) request that the Court enter an order dismissing both of them from this lawsuit for lack of personal jurisdiction. Plaintiffs allege that Defendant LifePoint exercises certain controls over Defendant PHC-Las Cruces, Inc., d/b/a Memorial Medical Center. Compl. at ¶ 32. They claim that LifePoint is the parent corporation of LifePoint RC and the parent corporation of Defendant PHC-Las Cruces, Inc., d/b/a Memorial Medical Center" ("Memorial Medical Center" ); and that both entities had a duty to hire, supervise, train and retain well-qualified healthcare providers necessary to have delivered Santiago as healthy and fully viable infant child and prevented his death. Compl. at ¶¶ 40, ¶ 171. Plaintiffs also assert agency and *respondeat superior* theories of liability against the LifePoint Defendants, arising out of the conduct of Memorial Medical Center staff, and Defendants Ifeyinway Obi, CNM, Linda

---

[1] Defendants claim that Plaintiffs incorrectly identify Defendant First Step, Inc. in their pleadings, and that correct name for the entity is LCDF First Step. The Court will adopt Defendants' representation as to the proper name.

Vasquez, RN, and Vittorio Taleon, M.D. *See id.* at ¶¶ 133–134, 149–50, 180–85. Plaintiffs also allege that the LifePoint Defendants and Memorial Medical Center are alter egos of each other. *See id.* at ¶ 41.

## III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a plaintiff's complaint for lack of personal jurisdiction. Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the *prima facie* burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process requirements. *Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir.1991); *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988); *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1342 (D.N.M.1994). In deciding a motion to dismiss for lack of personal jurisdiction, the trial court reviews the pleadings and affidavits submitted in a light most favorable to the plaintiff. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

## IV. Relevant Law

Plaintiffs must show that the exercise of personal jurisdiction is within the state's long-arm statute and comports with the due process requirements of the Fourteenth Amendment. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). New Mexico's long-arm statute is co-extensive with the Fourteenth Amendment's Due Process Clause. *Tercero v. Roman Catholic Diocese*, 2002-NMSC-18, 132 N.M. 312, 48 P.3d 50, 54 (citation omitted). The Due Process Clause authorizes personal jurisdiction where (1) a defendant has purposefully established minimum contacts within the forum state, and (2) where the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020); *Santa Fe Technologies, Inc. v.*

*Argus Networks, Inc.*, 42 P.3d 1221 (N.M. 2002) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Plaintiffs must establish that Defendants have "minimum contacts with the forum state, demonstrating that [they] purposefully availed [themselves] of the protections or benefits of the state's laws and should reasonably anticipate being haled into court there." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (internal quotations and citations omitted); *Alto Eldorado Partnership v. Amrep Corp.*, 124 P.3d 585 (N.M. App. 2005) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). In each case "there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Personal jurisdiction may be general or specific. General jurisdiction in a forum state requires contacts that are so "continuous and systematic" that the person is essentially "at home" in the state. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). A person is subject to general jurisdiction within a state if its contacts with the state are so continuous and systematic that the person is essentially at home in the State. *Id.* Specific jurisdiction is proper if (1) the out-of-state defendant purposefully directed its activities at residents of the forum State, and (2) the plaintiff's alleged injuries arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Even if a plaintiff satisfies the minimum contacts requirement, the defendant can still defeat jurisdiction by presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Zavala*, 2007-NMCA-149, ¶ 12 (citing *Burger King*, 471 U.S. at 476-77 (1985)).

**DISCUSSION**

The LifePoint Defendants maintain that they do not operate or control Memorial Medical Center, nor do they operate as its alter egos. They contend that they do not exert any control over Memorial Medical Center, and they do not employ any medical providers at Memorial Medical Center. Because they did not participate in any way in the events alleged in the complaint, they lack sufficient minimum contacts with New Mexico for the Court to exercise personal jurisdiction over them.

Plaintiffs attempt to counter Defendants' arguments with 79 numbered facts spanning twelve pages and include approximately 300 exhibits which were filed without leave of Court.[2] The Court will not belabor the discussion here by considering Plaintiffs' several hundred exhibits separately, but instead will refer to them categorically and only where relevant. In the end, despite submitting approximately 300 exhibits to support the response, Plaintiffs still fail to successfully counter the LifePoint Defendants' jurisdictional arguments.

Plaintiffs maintain that this Court may exercise both general and specific jurisdiction over the LifePoint Defendants, and for both kinds of jurisdiction, they focus on an alter ego theory, arguing that the Lifepoint Defendants are directly active in all aspects of Memorial Medical Center to a degree where Defendants and their subsidiaries are interchangeable. They contend that

---

[2] On May 3, 2021, Plaintiffs filed an unopposed motion for leave to file an excess number of exhibits to the response to Defendants' motion to dismiss (Doc. 37) which was denied by the Court for failure to specify the number of excess pages requested (Doc. 41). That same day, Plaintiff filed a response brief containing almost 300 exhibits. Plaintiffs did not resubmit the request for excess exhibits to advise the Court of the number of pages requested. About two weeks later, Plaintiffs filed a second response brief (sealed without prior Court approval), again containing about 300 exhibits (Doc. 44)—and still no word to the Court responding to its request concerning the number of excess pages. This Court's local rule allows parties to file excess pages of exhibits where there is no opposition. *See* D.N.M.LR-Civ. 10.5. However, because Plaintiff never responded to the Court's Order directing him to provide the specific number of excess exhibits, those excess exhibits have been filed without leave of Court. The Court has considered striking all of Plaintiffs' 300 exhibits for refusal to comply with this Court's local rules and orders, but in the interest of an efficient resolution of this motion to dismiss, the Court will proceed to consider the exhibits submitted by Plaintiffs.

This is not the first time Plaintiffs have ignored this Court's directives, orders or local rules. They have twice filed pleadings, or portions of pleadings under seal without leave of Court, resulting in an Order to Show Cause directed at both parties. Doc. 52. Defendants have timely responded to that Order to Show Cause, but Plaintiffs have not.

Defendants are engaging in a "corporate shell game" and that the Court should exercise personal jurisdiction over them.

The alter ego theory is primarily used to establish liability. *Alto Eldorado P'ship v. Amrep*, 2005-NMCA-131, ¶ 18, 138 N.M. 607, 614, 124 P.3d 585, 592. However, for jurisdictional purposes, "the true inquiry must be focused *1150 on minimum contacts and not substantive principles of corporate law," meaning that due process requirements must be satisfied even if alter ego is the sole theory upon which it seeks to rest jurisdiction. *Walker v. THI of New Mexico at Hobbs Ctr.*, 801 F. Supp. 2d 1128, 1149–50 (D.N.M. 2011). Under this analysis, not all of the elements of alter ego need to be proven in order to hale a foreign corporate parent into court, but courts will consider whatever elements a plaintiff shows in assessing minimum contacts. 138 N.M. at 616.

In exceptional circumstances, the contacts and activities of a subsidiary may be imputed to the parent company to establish jurisdiction over the parent company. *See Quarles v. Fuqua Indus.*, 504 F.2d 1358, 1362 (10th Cir. 1974); *accord Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004). Such exceptional circumstances require "a showing of instrumentality or domination by the parent, improper purpose by structuring in such a manner and proximate causation[.]" *Scott v. AZL Resources, Inc.*, 107 N.M. 118, 121, 753 P.2d 897, 900 (1988). However, the mere existence of the relationship between a subsidiary located in the forum state and the nonresident corporation is one relevant factor in determining whether personal jurisdiction can be asserted over the corporation. *Alto Eldorado,* 138 N.M. at 616. Also, general oversight by a parent company over a subsidiary, which is typical of all parent-subsidiary relationships, is not sufficiently pervasive or detailed to constitute domination over the subsidiary hospital's day-to-day operations and is insufficient to confer personal jurisdiction over a foreign parent company. *Quarles v. Fuqua*

*Indus., Inc.*, 504 F.2d 1358, 1363 (10th Cir. 1974) (a parent company's general supervision, coordination and financial control, including submission and approval of budgets, financial reporting, provision of adequate capital to the subsidiary, and the purchase of insurance for subsidiaries, were inherent in all parent-subsidiary relationship and thus did not support the exercise of personal jurisdiction over the foreign parent); *see Quimbey v. Cmty. Health Sys. Pro. Servs. Corp.*, No. CV 14-559 KG/KBM, 2015 WL 13651239, at *5 (D.N.M. Oct. 1, 2015) (jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation . . .") (citing *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994)).

## I.  General Jurisdiction

General jurisdiction requires that a defendant have contacts with New Mexico 'so continuous and systematic as to render [it] essentially at home in the forum state.'" *Lucero v. Carlsbad Med. Ctr., LLC*, 2018 U.S. Dist. LEXIS 109527, at *5; 2018 WL 3209406 (D.N.M. 2018) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (other citations omitted); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *OMI Holdings v. Royal Ins. Co.*, 49 F.3d 1086, 1090-91 (10th Cir. 1998); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996). General jurisdiction permits a court to exercise personal jurisdiction over the defendant even if the underlying suit is unrelated to the defendant's contacts with the forum state.  *See Helicopteros*, 466 U.S. at 415. A corporate entity's contacts are sufficiently continuous and systematic such that the entity is "at home" in the forum state when the state is the entity's place of incorporation or the principal place of business. *Goodyear Dunlop*, 131 S. Ct. at 2853-54 (citation omitted). "A corporation's place of incorporation and its principal place of business are the 'paradigm bases for general jurisdiction.'"

*Cruz v. Lovelace Health Sys.*, 2019 U.S. Dist. LEXIS 145709, at *19; 2019 WL 4016281 (D.N.M. 2019) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation and brackets omitted)).

Defendants contend that: they do not have continuous and systematic contacts with New Mexico; they do not operate or control Memorial Medical Center or operate as alter egos; they do not exert any control over Memorial Medical Center; and they do not employ any medical providers at Memorial Medical Center. Kathy Teague, who serves as an officer and the assistant vice-president and corporate secretary for at least 500 subsidiaries of LifePoint Health, Inc., oversees the corporate structure and legal filings for LifePoint and its subsidiaries. In her Affidavit, Ms. Teague confirms the LifePoint Defendants' assertions and states specifically, that LifePoint Health, Inc. ("LifePoint"):

- is a holding company with no employees, and Memorial Medical Center is an indirectly, wholly-owned subsidiary of LifePoint.

- does not do business as Memorial Medical Center or as PHC-Las Cruces and exercises no control over day-to-day operations of that facility;

- does not have a registered agent for service of process in New Mexico and conducts no business in this state;

- does not own property in New Mexico and has no employees anywhere;

- does not maintain an office in New Mexico and does not advertise or solicit business here;

- does not market or sell medical services to the general public;

- does not employ, hire, train, credential or supervise health care staff at Memorial Medical Center;

- does not make financial decision for Memorial Medical Center;

- does not manage billing or collection of fees for services rendered by Memorial Medical Center;

- does not draft, create or have any role in implementation or enforcement of operating procedures, policies and procedures or medical staff by-laws at Memorial Medical Center;

- does not exercise any control over the day-to-day operations of Memorial Medical Center and is the remote parent company for Memorial Medical Center.

Doc. 35-3 (Teague Aff.). Ms. Teague further states that LifePoint RC solely aggregates and pays payroll taxes for subsidiaries of LifePoint Health, Inc., including Memorial Medical Center.

Plaintiffs rely on several categories of evidence to argue that LifePoint is directly involved in the day-to-day operations of Memorial Medical Center, but they all miss the mark:

A. LifePoint Health Website

Plaintiffs rely on content contained on the webpages of LifePoint to argue that the website shows significant control over MMC's information technology. Pltffs' Exs. 9, 26. They claim that the website lists available positions at Memorial Medical Center and allows the submission of resumes by job applicants. In her deposition taken as corporate representative under Rule 30(b)(6), Ms. Teague explained that the website is actually operated and maintained by a separate subsidiary of LifePoint—namely, HSCGP, LLC ("HSCGP"). Ms. Teague also noted that HSCGP is distinguishable from LifePoint Health, which is a holding company and "doesn't do business.") Doc. 38-9 at 35:18-25).[3]

The website contains a legal disclaimer stating: "LifePoint Health, Inc. is a holding company only." It does not own or operate hospitals or healthcare providers and does not have any employees" and defines "employees":

> When terms such as "LifePoint" or "LifePoint Health" or "we" or "us" are used herein, they refer to LifePoint Health, Inc. and its operating subsidiaries. When terms such as "hospital" or "provider' or "facility" are used herein, they refer to

---

[3] "HSCGP" is an acronym for LifePoint's corporate headquarters, known as the "health support center." Doc. 38-9 (Teague Depo.).

the hospitals or other healthcare providers that are wholly owned and operated by subsidiaries of LifePoint Health, Inc. Finally, when terms such as "LifePoint employees" or "our employees" are used herein, they refer to individuals employed by subsidiaries of LifePoint Health, Inc.

www.lifepointhealth.net (under tab "who we are"). This information—that LifePoint Health acts through its subsidiaries—is consistent with the information disclosed in Defendants' Form 10-K for the period ending on December 31, 2017. *See* Pltffs' Ex. 11.[4] It does not, however, constitute evidence that Defendants are interchangeable with their subsidiaries. [WPJ1] "References by a parent corporation to the business of its subsidiary as being part of the business of the parent does not serve to erase the substantive and legal distinction between corporations." *Berry v. Bryant,* 2012 WL 12819204, at *5 (D.N.M. 2012) (Herrera, J.); *Weisler v. Community Health Sys., Inc.*, 2012 WL 4498919, at *5 (D.N.M. 2012) ("[G]eneral references by a parent corporation to the business of a subsidiary as being part of the business of the parent does not confer personal jurisdiction or serve to erase the substantive and legal distinctions between corporations).

Plaintiffs also contend that Memorial Medical Center employees use a website with a LifePoint web address to access facility work schedules, but this claim is not supported even by Plaintiffs' own exhibits, which indicate that employee training is carried out by HealthTrust Workforce solutions ("HealthStream") which is a separate subsidiary of HCA Healthcare Inc.— which is not affiliated with the LifePoint Defendants and is a non-party in this case. *See* Pltffs' Ex. 19 at 40-41; at 42:2-6; Ex. 41 (Doc. 49 at 262 & 264, references to "HStream"); Ex. 42 at 20; *see* Doc. 44 at 10, n. 8 & 9 (referring to HealthStream websites).

---

[4] Although parties do not explain what a Form 10-K is, a quick internet inquiry by the Court reveals that it is an annual report that provides a comprehensive overview of a company's business and financial condition and includes audited financial statements. *See* https://www.investor.gov/introduction-investing/investing-basics/glossary/form-10-k. , statements in the Form 10-K referring to CHSI and its subsidiaries collectively do not constitute admissions that defendant exercises the requisite control to establish jurisdiction under an alter ego theory). *See* Berry v. Bryant, 2012 WL 12819204, at *5 (D.N.M. 2012) (Herrera, J.) (in

Plaintiffs state that Memorial Medical Center employees undergo a LifePoint Health Education Planning Program "through a collaboration with an entity called *HealthStream*." *See, e.g.*, Pltffs' Fact 72 (emphasis added). The LifePoint Defendants cannot expect to be haled into a New Mexico court by contracting with an unaffiliated entity, even if that entity resides in the state. HealthStream appears to make use of the LifePoint tradename, but there is no evidence that HealthStream is affiliated in any way with Defendants and use of a tradename does not constitute evidence of Defendants' "contacts" with the forum state. *See, e.g., Quimbey v. Cmty. Health Sys. Prof'l Servs. Corp.*, 2015 WL 13651239, *18-19 (D.N.M. 2015) (citing *Moody v. Charming Shoppes of Delaware, Inc.*, 2008 WL 2128955, *4, 6-7 (N.D. Cal. 2008) (unverified website owned and operated by third-party not evidence of separate foreign parent company's contacts); *Weisler v. Community Health Sys., Inc.*, 2012 WL 4498919, *40-41 (D.N.M. 2012) (use of corporate logos does not confer personal jurisdiction).

Defendants have shown that they do not own or operate the website which offers resources and training to Memorial Medical Center employees. *See Weisler v. Cmty. Health Sys.*, 2012 WL 4498919, *14 (D.N.M. 2012) (finding that shared website does not confer personal jurisdiction and concluding that defendant hospital presented evidence that it was a holding company with no employees and that it did not own or operate website but rather that it was provided by a separate and distinct sponsoring facility).

Moreover, even if the website were attributed to the LifePoint Defendants, it still does not confer personal jurisdiction over them. Plaintiffs contend that the website is interactive, but there is no evidence of this. The mere submission of information or resumes cannot support the assertion of personal jurisdiction. *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 343 F. Supp. 2d 208, 215 (S.D.N.Y. 2004) (use of a website for online employment recruitment was insufficient

to establish that it did business over the internet or otherwise interacted with Texas residents); *Soma Med. Int'l v. Std. Chtd. Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999) (passive website cannot support the assertion of personal jurisdiction); *see also Dinkel v. Crane Care, Inc.*, 2010 U.S. Dist. LEXIS 151605, *15-16 (D.N.M. 2010) (where the level of interactivity and the commercial nature of the information exchanged on the website are slight, New Mexico courts decline to exercise personal jurisdiction).

     B.     Administrative Services and Licensing Agreements

Plaintiffs argue that certain agreements demonstrate that the LifePoint Defendants are alter egos of Memorial Medical Center. For example, Plaintiffs point to a managerial and administrative support services agreement (Pltffs' Ex. 16) between Memorial Medical Center and LifePoint Corporate Services through which the latter makes available and provides certain advisory and support services to Memorial Medical Center. *Id.* at 1. However, LifePoint Corporate Services is a separate subsidiary of LifePoint and is a non-party to this case, and so is not subject to any of Plaintiffs' allegations in this case—much less subject to personal jurisdiction in this lawsuit.

Plaintiffs also state that there are "multiple agreements entered into between LifePoint Health, Inc. and its New Mexico subsidiaries." Pltffs' Fact 25. They contend, for example, that the Court can find jurisdiction is proper based on a licensing agreement between LifePoint Health, Inc. and Memorial Medical Center. *See* Pltffs' Ex. 15. The agreement grants the licensor (Memorial Medical Center) the use of LifePoint logos and trademarks and allows LifePoint the ability to confirm the quality of "Services" offered by LifePoint as licensee "in conjunction" with the use of those logos. *Id.* at 1, §2.2. However, this agreement does not satisfy a minimum contacts threshold, nor does it provide a basis for the LifePoint Defendants to fairly expect to be haled into

a New Mexico court. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998) (doing business with a company that does business in the forum state is not the same as doing business in that state). Moreover, the licensing agreement does not establish that LifePoint directly controls Memorial Medical Center's day-to-day operations so as to find that both entities are interchangeable under an alter ego theory. *See Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1179 (D. Ariz. 2010) (mere identity of corporate logos, without more does not establish that one company dominated another's business activities or acted as its alter-ego).

C.     LifePoint's Name on W-2 Forms

Plaintiffs argue that LifePoint RC, Inc., which is a separate, subsidiary of LifePoint Health, Inc., is nevertheless the employer of certain healthcare providers because its name appears on Form W-2s. But they offer no legal authority for this position, nor can the Court find any. Ms. Teague stated that LifePoint RC solely aggregates and pays payroll taxes for subsidiaries of LifePoint Health. This makes LifePoint RC technically a "statutory employer" for tax withholding purposes but has little or no relevance for jurisdiction purposes. *See Garcia v. Bd. of Regents*, 2016-NMCA-052, ¶ 15 n. 2, 373 P.3d 998 (the term "employer" and the use of the term "statutory employer", as defined in I.R.C. § 3401(d), for purposes of the Form W-2 "strictly applies only to income tax withholding") (citing *Otte v. United States*, 419 U.S. 43, 51 (1974) (emphasis added); *see also Walker v. THI of N.M. at Hobbs Ctr.,* 801 F. Supp. 2d 1128, 1159 (D.N.M. 2011) (district court appropriately declined to exercise personal jurisdiction over parent company that filed income tax returns in New Mexico).

D.     Risk Management, Insurance, Budget Control and Approval; Financial Reporting; Employment Benefits and Policy Implementation

Plaintiffs contend that the LifePoint Defendants handle other aspects of business for Memorial Medical Center, such as risk management and insurance, employment benefits and financial reporting, which is evidence of an alter ego relationship. *See* Pltffs' Exs. 19, 70, 71 (benefits package); Ex. 39 (patient privacy program); Ex. 25 (insurance policy). They also contend that LifePoint is responsible for the oversight of accounting policies, financial reporting and internal control for its subsidiaries. Doc. 49-9 at 36.

However, the provision of these business-related services does not mean that Defendants are interchangeable with their subsidiaries under an alter ego theory nor does it mean that these services satisfy the minimum contacts requirement. *See Quarles v. Fuqua Indus.*, 504 F.2d 1358, 1362 (10th Cir. 1974) (parent company's general supervision, approval of budgets, financial reporting, provision of adequate capital to the subsidiary, and the purchase of insurance for subsidiaries are inherent in all parent-subsidiary relationship and thus did not support the exercise of personal jurisdiction over the foreign parent); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993) ("Because it is not beyond the normal parent-subsidiary relationship for the parent to serve as ERISA Plan Administrator for the subsidiary, we do not think that this policy evidences excessive control by Defendant over Northwestern Bell's employment practices."); *Walker v. THI of N.M. at Hobbs Ctr.*, 801 F. Supp. 2d 1128, 1159 (D.N.M. 2011) (provision of employees benefits plans and insurance coverage and filing of income tax returns did not constitute evidence of the parent company's day-to-day control or management of the long-term care facility subsidiary or a contract sufficient to give a court personal jurisdiction over the foreign parent company); *Andresen v. Diorio*, 349 F.3d 8, 12 (1st Cir. 2003) (overall financial and policy control insufficient to find personal jurisdiction); *Wirth v. Sun Healthcare Grp., Inc.*, 2017-NMCA-007, ¶ 35 (the corporate parent is "almost invariably engaged in the managerial functions of establishing policy,

determining budget, providing administrative support, and participating in the decision[ ]making of the subsidiary corporation.") (citing *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998)).[5]

None of the services provided by the LifePoint Defendants (such as financial and policy control, policies and procedures, purchase of insurance) constitute an exercise of day-to-day control that is necessary to support an alter ego theory. *See Quarles,* 504 F.2d at 1364 (where parent company has opportunity to exercise control over subsidiary, it is "the exercise of, not the opportunity to exercise, control [which is] determinative." *Cmp., Alto Eldorado Partnership v. Amrep Corp.*, 2005- NMCA-131, ¶ 31, 138 N.M. 607, 124 P.3d 585 (finding plaintiffs made sufficient showing to satisfy due process requirement for minimum contacts where same board members of parent company ran subsidiary's day-to-day operations).

Plaintiffs claim that LifePoint Health and LifePoint R.C. have the same headquarters and corporate leadership which indicates an alter ego relationship. *See* Pltffs' Fact 15. This claim is legally unfounded: an overlap between board directors in a parent-subsidiary relationship is not sufficient to justify the assertion of personal jurisdiction. *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340 (D.N.M. 1994); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175 (9th Cir. 1980). Rather, liability based on alter ego theory lies where the shareholders have so manipulated the corporation to further their own individual interests that the identity of the corporation has merged into its shareholders. The circumstances in this case do not support such a finding.

---

[5] *Weisler v. Community Health Sys., Inc.*, 2012 U.S. Dist. LEXIS 139924, *40-41 (D.N.M. 2012) (general oversight, policies and procedures, shared website and corporate logos, and Code of Conduct); *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (citing *Bestfoods*, 524 U.S. at 72 (monitor performance and finances)); *Andresen* v. Diorio, 349 F.3d 8, 12 (1st Cir. 2003) ("overall financial and policy control"); *Arce v. Aramark Corp.*, 239 F.2d 153, 172 (D.P.R. 2003) (employee handbook with name of parent); *Hvide Marine Int'l v. Employers Ins*., 724 F. Supp. 180, 187 (S.D.N.Y. 1989) (employee handbook); *Jemez Agency, Inc. v. CIGNA Corp*., 866 F. Supp. 1340 (D.N.M. 1994) (overlap between board directors); *Lucero v. Carlsbad Med. Ctr., LLC*, 2018 U.S. Dist. LEXIS 109527, *9-12 (D.N.M. June 29, 2018) (string citations omitted) (collective corporate references on websites and in consolidated financial reports).

D.      LifePoint RC's "Consent" to Jurisdiction

Plaintiffs argue that LifePoint RC maintained a registered agent in New Mexico at the time of the underlying incidents, and continues to maintain one, and thus has consented to personal jurisdiction in New Mexico.

In *Werner v. Wal-Mart Stores, Inc.*, 1993-NMCA-112, ¶ 9, 116 N.M. 229, 231, the New Mexico Court of Appeals held that the district court erred in dismissing action for lack of personal jurisdiction where defendant corporation had registered agent in forum state. *See* NMSA § 53–17–11. However, under a full consideration of the due process requirements for jurisdiction, it is not at all clear if LifePoint RC has consented to personal jurisdiction simply by registering an agent several years ago—notwithstanding the holding in *Werner*.

First, contrary to Plaintiff's inference, LifePoint RC is not currently registered in this state. It was registered as an active corporation with the New Mexico Secretary of State in August of 2017 but withdrew from New Mexico in December 2019. Doc. 44-3, ¶26 (Teague Aff.); Pltffs' Ex. 8. Also, LifePoint RC was not registered in New Mexico when Plaintiffs filed their complaint in July 2020. *Cadena v. Ragsdale*, No. CIV-19-79-SLP, 2019 WL 3069436, at *2 (W.D. Okla. July 12, 2019) (existence of personal jurisdiction is evaluation at the time the complaint was filed), *reconsideration denied,* No. CIV-19-79-SLP, 2020 WL 9073566 (W.D. Okla. Apr. 21, 2020). Determining that personal jurisdiction exists only because at one time a corporation had a registered agent in the forum state runs afoul of the "paradigm bases for general jurisdiction" for a corporation, which is "the place where the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Second, the Court does not read *Werner* to pronounce a bright-line rule creating jurisdictional "consent" for any company that has a registered agent in the state. The legislative

intent behind §53–17–11 was to even the playing field between foreign and domestic corporations operating within the state. *Id.,* ¶10 (noting legislative intent was "to equalize foreign and domestic corporations operating within New Mexico" with respect to rights and privileges, as well as "duties, restrictions, penalties and liabilities, including being subject to state court jurisdiction") (internal quotations omitted). *Werner* contained no discussion of due process or reasonableness concerns, which is critical part of the analysis.

The scope of *Werner's* holding bears scrutiny in light of the particular facts of that case. As Defendants point out, the New Mexico Supreme Court has granted certiorari to review the case. *See Rodriguez v. Ford Motor Co.*, 2019-NMCA-023, 458 P.3d 569, *certiorari granted in* 2019 WL 11706154 (N.M. April 8, 2019). In *Rodriguez,* the New Mexico Court of Appeals noted that *Werner* did not address any due process concerns because the defendant in that case recognized "that it has a sufficient presence in New Mexico to satisfy due process concerns." *Rodriguez*, at ¶ 26 (citing *Werner,* at ¶14). That is not the situation here, where the LifePoint Defendants argue there are insufficient minimum contacts to warrant a finding of either general or specific jurisdiction.

LifePoint RC solely aggregates and pays payroll taxes, and conducts W-2 reporting for LifePoint subsidiaries including Memorial Medical Center. These activities do not constitute minimum contacts for general jurisdiction, nor do they serve as a basis to find liability under an alter ego theory. *See Jemez Agency, Inc.,* 866 F.Supp. at 1340 (subsidiaries were entities separate and distinct from parent corporation and there was no evidence of improper or fraudulent purpose for incorporation even though employees of parent and ultimate parent shared common payroll system, subsidiaries conducted business as one entity and parent provided extensive financing to the group). And, even assuming that the functions of LifePoint RC were found to be sufficient to

meet the minimum contacts requirement, it would unreasonable to find that LifePoint RC consented to personal jurisdiction in New Mexico to defend a negligence and wrongful death lawsuit simply because it had a registered agent in the state several years before this complaint was filed. *See Dental Dynamics, LLC,* 946 F.3d at 1229 (due process clause authorizes personal jurisdiction where the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice).

Accordingly, the Court finds there is no evidence that the LifePoint Defendants engaged in continuous and systematic contacts with New Mexico and therefore general jurisdiction does not exist.

## II.    Specific Jurisdiction

For specific jurisdiction to apply, a nonresident defendant (1) must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Rambo v. American Southern Insurance Co*., 839 F.2d 1415, 1419 n. 6 (10th Cir.1988)). The arising-out-of component of the test for specific jurisdiction requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). That link must show that the nonresident deft has purposefully established significant and is not some "random, fortuitous or attenuated" contact with the forum state. *Burger King,* 471 U.S. 462, 472 (1985); *Helicopteros Nacionales,* 466 U.S. at 414.

For specific jurisdiction, a court considers only the contact out of which the cause of action arises. *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011).

Defendants contend that Plaintiffs do not assert any allegations regarding the LifePoint Defendants in the fact section of their Complaint which details those parties who provided Ms. Correa's care and treatment during the delivery of Santiago Sebastian Ortiz on August 11–12, 2017. The complaint does allege that individual defendants Obi and Taleon acted in the course and scope of their employment with, or as agent or apparent agent of, the LifePoint Defendants. See Doc. 1-3, ¶¶133, 148. Moreover, the Court has previously determined that both Dr. Taleon and C.N.M. Obi were full-time employees of La Clinica Familia, a Public Health Service facility, at the time of the underlying incidents. Doc. 42 at 8. There is also no evidence in the record that the LifePoint Defendants participated in the recruitment, hiring, credentialing or supervision of the individual defendants in this case and so the actions of Defendants Taleon and Obi cannot be attributed as employees to either of the LifePoint Defendants based on the allegations of the complaint.[6]

The question here is whether the LifePoint Defendants engaged in some act by which it purposefully directed its activities at New Mexico residents and availed itself of the privilege of conducting activities within the state, thus invoking the benefits and protections of its laws. *Zavala,* 2007-NMCA-149, ¶11 (if defendant "purposefully established contact" with forum state, that state has jurisdiction "only if the cause of action arose out of the contacts" with that state).

It has already been established that the LifePoint Defendants are not incorporated in New Mexico, have no business offices in New Mexico, and do not conduct any business in the state.

---

[6] Plaintiffs argued that websites employees at Memorial Medical Center use a LifePoint website for hiring and training purposes, but as discussed earlier, the evidence indicates that employee training is actually carried out by HealthStream, which is not affiliated with the LifePoint Defendants.

Doc. 35-3 at ¶¶ 4, 6–8, 26–28.  There is no evidence that they exercise any control over the day-to-day operations of Memorial Medical Center.  *Id.* at ¶¶ 12, 32.  They do not advertise in New Mexico nor do they market or sell medical services to the general public.  *Id.* at ¶¶ 9–10, 19, 29–30, 39.

Because this is a medical malpractice case, the arising-out-component in this case necessarily relates to the medical care provided to Ms. Correa.  None of the services provided by the LifePoint Defendants have any connection to the provision of that care.  In *Weisler v. Cmty. Health Sys., Inc.,* a District of New Mexico medical negligence case involving a parent-subsidiary hospital network and facility, is very similar to the instant lawsuit. No. CIV. 12-0079 MV/CG, 2012 WL 4498919, at *7 (D.N.M. Sept. 27, 2012).  As in this case, the parent company in *Weisler* owned several New Mexico hospitals, and: (1) provided certain policies and forms to its subsidiaries; (2) had entered into a management agreement under which the parent company provided limited consulting and management services to the hospitals and retained approval control of key management hospital personnel; and (3) maintained a website that provided access to job information through a separately sponsored website and contained a disclaimer stating that the parent company did not own any employees, operate any hospitals or recruit or employ any physicians.  *Weisler,* 2012 WL 4498919, at *2. Yet the court declined to exercise personal jurisdiction over the foreign parent company on the grounds that there was no evidence that the alleged injury arose out of any of the contacts or services provided by the parent company.

Likewise, the Court finds here that the LifePoint Defendants engaged in no contacts in New Mexico that gave rise to Plaintiffs' underlying medical negligence claims.  Moreover, LifePoint RC's provision of payroll tax services to Memorial Medical Center also bears no relationship at all to those claims. Accordingly, the Court finds that Plaintiffs have not satisfied either requirement

for specific jurisdiction in that: (1) Defendants' contacts were not purposefully directed at New Mexico residents and (2) Plaintiffs' alleged injuries die not arise out of those contacts. As a result, there is no basis for the Court to exercise specific jurisdiction over Defendants.

**THEREFORE,**

**IT IS ORDERED** that the LifePoint Defendants' Motion to Dismiss for Lack of Personal Jurisdiction **(Doc. 35)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE